No. 81-531

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

---

J. E. SPENCE,

Plaintiff and Respondent,

vs.

DON YOCUM,

Defendant and Appellant.

---

Appeal from: District Court of the Eighteenth Judicial District,
In and for the County of Gallatin
Honorable W. W. Lessley, Judge presiding.

Counsel of Record:

For Appellant:

Thomas I. Sabo, Bozeman, Montana

For Respondent:

Lyman H. Bennett, III, Bozeman, Montana

---

Submitted on briefs: August 26, 1982

Decided: October 7, 1982

Filed: OCT 7 - 1982

Clerk

Mr. Justice Frank B. Morrison, Jr., delivered the Opinion of the Court.

The District Court of the Eighteenth Judicial District, Gallatin County, entered a judgment September 3, 1981, holding that Don Yocum defrauded J. E. Spence. Yocum was ordered to pay Spence his actual damages, twenty-five thousand dollars ($25,000), together with interest thereon. Don Yocum now appeals that judgment.

Joe Spence is the baker for the Buttrey's Food Store in Bozeman, Montana. For the three-year period prior to July, 1979, Spence frequently stopped at the Cat's Paw Lounge on his way home from work. During those three years, Spence became familiar with defendant-appellant, Don Yocum, the manager and owner of the Cat's Paw Lounge.

Don Yocum was also the sole owner of corporate stock in The Cat's Den, Inc., the Montana corporation which operated the Cat's Paw Lounge. Yocum had a second business corporation, the New Arcade Steakhouse, Inc., the Montana corporation which operated "T. J.'s Lounge" in Bozeman, Montana.

The Cat's Paw Lounge is located in a building leased from Roger Hougen furnished for a turn-key bar operation. To counteract the financial difficulties caused by adverse economic conditions in 1979, Yocum sold and transferred certain assets of the New Arcade Steak House, Inc. to The Cat's Den, Inc., for use in the Cat's Paw Lounge: a Montana liquor license for Bozeman, Montana; restaurant fixtures; furniture; and miscellaneous bar equipment. He also installed a dance floor in the lounge. Nevertheless, the lounge continued to experience financial difficulties throughout the spring and summer of 1979.

-2-

In June of 1979, Spence and Yocum discussed the possibility of Spence investing cash in The Cat's Den, Inc., to ease cash flow problems until business increased in the fall with the arrival of Montana State University students. Yocum told Spence that he owned corporate assets totalling two hundred fifty thousand dollars ($250,000.00): A Montana liquor license valued at one hundred thirty thousand dollars ($130,000.00); inventory totalling twenty thousand dollars ($20,000.00); equipment and fixtures valued at fifty-five thousand dollars ($55,000.00); and good will worth forty-five thousand dollars ($45,000.00). On the basis of that information, Spence agreed to invest $25,000.00 cash in return for a ten percent interest in the business.

Prior to investing the $25,000.00, Spence contacted Mr. Sherman Veltkamp, the recently-hired corporate accountant of The Cat's Den, Inc., to verify Yocum's statements. Mr. Veltkamp was only able to acquire access to bank statements and cancelled checks. He testified at trial that it was "far more troublesome" to acquire information about The Cat's Den, Inc., than about any other business for which he had worked.

Other testimony at trial indicated that the corporate tax return signed by Don Yocum and filed with the Internal Revenue Service in April of 1979, showed the value of The Cat's Den, Inc., to be a seventy-one thousand dollar ($71,000.00) deficit. On that return, the liquor license was valued at seventy-five thousand dollars ($75,000.00).

Mr. Yocum deposited Mr. Spence's check for $25,000.00 in his personal account at a bank in Grand Rapids, Minnesota. The next day, July 16, 1979, Yocum wrote a personal check to the Cat's Paw for $25,000.00. He wrote on the check, "personal loan to the business." The corporate records indicate that

the $25,000.00 was a personal loan from Don Yocum. Spence never received any evidence of his ownership in the business or of his loan.

In January 1980, The Cat's Den, Inc., became insolvent and Yocum independently returned the lounge to its owner, Roger Hougen. Spence was never consulted regarding any aspect of the business.

On February 29, 1980, Spence filed a complaint against Yocum in the Eighteenth Judicial District Court alleging Yocum fraudulently induced Spence to invest $25,000.00 in the business and requesting judgment against Yocum. The District Court granted judgment for Spence in the amount of $25,000.00, together with interest thereon from July 14, 1979, at the rate of twelve and a half percent (12 1/2%) per annum through October 10, 1979, and at the rate of sixteen percent (16%) per annum from and after the 10th day of October, 1979.

In appealing that judgment, Yocum raises the following issue: Whether there was substantial credible evidence to support the District Court's finding of actual fraud based upon misrepresentation. Specifically, Yocum contends that there is insufficient evidence to support four of the nine essential elements of fraud: A representation; the falseness of the representation; Yocum's knowledge of the representation; and Spence's right to rely upon Yocum's "representation." We find substantial credible evidence to support each of the elements and affirm the judgment of the District Court.

### Representation

Yocum first contends that his statement to Spence concerning the value of the business was merely an opinion, not a representation upon which Spence could rely. It is true that "[s]tatements as to the value of property are

-4-

generally considered declarations of opinion and will not constitute a proper basis for rescission." Dolson Co. v. Imperial Cattle Co. (1981), ____ Mont. ____, ____, 624 P.2d 993, 996, 38 St.Rep. 306, 309-310, citing 37 Am.Jur.2d Fraud and Deceit, Sec. 119 at 164. However, we emphasize the word "generally." Statements concerning property value are opinions when the "parties stand on an equal footing and have equal means of knowledge, with no relation of trust or confidence existing between them." 37 Am.Jur.2d Fraud and Deceit, Sec. 115 at p. 160.

Spence and Yocum do not stand on equal footing in this instance. Yocum is the businessman. Yocum has personal knowledge of the financial condition of the business. Spence is merely a baker and frequent customer at the Cat's Paw Lounge. He placed a great deal of trust and confidence in Yocum when he decided to invest in the business. For these reasons, the District Court held the valuation to be a "representation."

In Dolson Co. v. Imperial Cattle Co., supra, we stated at p. 310: "The District Court is in the best position to weigh the factors involved, assess the credibility of witnesses, and conclude whether the statements regarding value constitute fact or opinion." We find substantial credible evidence to support the court's determination that the statements regarding value constitute a factual representation.

### Falseness of the Representation and Maker's Knowledge of the Falseness

Two additional elements of actual fraud are the falseness of the representations made and the maker's knowledge of the falseness. Van Ettinger v. Pappin (1978), 180 Mont. 1, 588 P.2d 988. The District Court found that the representations made by Yocum to Spence were false and that Yocum was aware of their falseness. We agree.

The 1979 tax return for The Cat's Den, Inc., showed the value of the lounge to be a $71,000.00 deficit. Even given the District Court's comment that tax returns are not reliable indicators of value, the $321,000.00 discrepancy between the two stated values is sufficient to indicate that the business was not worth $250,000.00 in June of 1979 and that Yocum knew it.

In addition, Yocum indicated to Spence that he owned the lounge. In reality, the lounge and many of its fixtures are owned by Roger Hougen. Yocum signed the lease with Hougen for the building and its contents. There was substantial credible evidence presented at trial indicating that Yocum was consciously making false representations to Spence.

### Right to Rely Upon Representation

We held in Van Ettinger v. Pappin, supra, quoting from Lee v. Stockmen's National Bank (1922), 63 Mont. 262, 284, 207 P. 623, 630, that:

> "When it appears that a party, who claims to have been deceived to his prejudice, has investigated for himself or that the means were at hand to ascertain the truth. . .of any representation made to him, his reliance upon such representation made to him, however false they may have been, affords no ground of complaint." 588 P.2d at 994.

Yocum asserts that Spence discussed the financial condition of the corporation with its accountant and therefore has no right to rely on Yocum's representations. The District Court disagreed.

The accountant himself testified at trial about the extreme difficulty of acquiring financial information about the corporation. Spence did attempt to independently ascertain the truth of the representations made, but was unsuccessful. However, Yocum possessed a superior knowledge of the financial status of the lounge, as he was the owner. In Bails v. Gar

(1976), 171 Mont. 342, 349, 558 P.2d 458, 462, we found such superior knowledge to be a factor in determining a purchaser's right to reply upon a representation of the seller. There is, under these facts, substantial credible evidence to support a finding of reasonable reliance by Spence upon the representations of Yocum.

For the reasons discussed, we affirm the judgment of the District Court.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices