JUSTICE HUNT
dissenting.
I dissent from the majority opinion. Summary judgment is proper only when no genuine issue of material fact exists. Rule 56(c), M.R.Civ.P.; Spain-Morrow Ranch, Inc. v. West (1994), 261 Mont. 441, 442, 872 P.2d 330, 331-32. Conversely, if a genuine issue of material fact exists, summary judgment is not proper. The record shows that there exist genuine issues of material fact as to the damages suffered by Lewis, therefore, summary judgment was not proper.
The majority correctly states that when a seller breaches a contract for the sale of goods, the buyer can either recover the difference between the cost to cover and the contract price, along with any consequential and incidental damages, or the buyer can recover lost profits measured by the difference between the market price and the contract price, along with consequential and incidental damages. The second option is available to the buyer who chooses not to cover or who is unable to do so.
The majority affirmed the District Court’s conclusion that Nine Mile met its burden by presenting evidence of stumpage in Missoula County in the summer of 1990 in the form of the $70/MBF price found in the logging agreement, and that Lewis failed to raise a genuine issue of fact of a market price higher than $70/MBF. Based on these conclusions, the District Court held that Lewis was not entitled to consequential damages in the form of lost profits under § 30-2-713, MCA. The record does not support these conclusions.
For the purposes of determining damages under § 30-2-713, MCA, the market price is to be determined as of summer 1990, Missoula County, the time and place of tender. However, if evidence of market price at the time and place of tender is not readily available, any other place within commercial judgment or under usage of trade may be used as a reasonable substitute. Section 30-2-723(2), MCA. Lewis testified as to his difficulty in procuring similar agreements in Missoula County on or about the time of the Nine Mile agreement. Lewis *345 also testified as to the volatile and rising nature of the market at the time in question. Norman Schweizer, an expert for Nine Mile, testified that Nine Mile’s timber was comparable, if not bigger, than the timber Lewis purchased from Midas Mines for $50/MBF and later sold to Champion International, Lincoln County, for $200/MBF. Stephen Haas, a senior accountant at Champion who reviewed contracts for purchases of timber on the stump and delivered to mills in Lincoln County and Missoula County, testified that he was confident that the average amount paid for stumpage in Missoula County in the summer of 1990 exceeded $70/MBF and that $200/MBF would not have surprised him.
As the party opposing the summary judgment, Lewis is entitled to have any inference drawn from the factual record resolved in his favor. Rucinsky v. Hentchel (Mont. 1994), 881 P.2d 616, 618, 51 St. Rep. 887, 888; Boylan v. Van Dyke (1991), 247 Mont. 259, 266, 806 P.2d 1024, 1028. The testimony of Haas and Schweizer as to market price is part of the factual record. Based on their testimony, it is reasonable to infer that comparable, if not bigger, timber from Nine Mile would have generated a comparable, if not better, MBF in Missoula County than the $200/MBF generated in Lincoln County. Resolving this inference in favor of Lewis raises a genuine issue of material fact as to the market price of stumpage in Missoula County in the summer of 1990, and consequently, raises a genuine issue of fact as to whether Lewis is entitled to damages for lost profits under § 30-2-713, MCA.
The majority also affirmed the District Court’s conclusion that Lewis was not entitled to consequential damages as defined by § 30-2-715(2)(a), MCA, which provides:
(2) Consequential damages from the seller’s breach include:
(a) any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise ....
The record shows that while Lewis did not cover following Nine Mile’s breach, there is a factual question as to whether cover was possible. On or about the time Lewis negotiated the Nine Mile agreement, Lewis attempted unsuccessfully to secure six similar agreements. Lewis entered into the agreement with Nine Mile on June 25, 1990. Nine Mile breached 24 days later on July 18, 1990. However, the record shows that as early as July 3,1990, eight days after executing *346 the contract, Lewis was notified by Nine Mile that he would be prevented from exercising his rights under the contract. It is at least a factual issue whether the market conditions that prevented Lewis from securing similar contracts at the time the contract with Nine Mile was executed existed days later and for a reasonable time thereafter.
In addition, there is nothing in the record to show that Nine Mile provided the District Court with evidence that substitute goods were available to Lewis following the breach. The burden of proof rests with the party seeking summary judgment to provide the court with evidence which excludes any real doubt as to the existence of a genuine issue of fact. Berens v. Wilson (1990), 246 Mont. 269, 271, 806 P.2d 14, 16. Only after the moving party has met this burden of proof does the burden shift to the nonmoving party to show that a genuine issue of fact exists. Morton v. M.W.M., Inc. (1994), 263 Mont 245, 249, 868 P.2d 576, 579. Nine Mile’s failure to produce evidence which excludes any real doubt as to Lewis’s reasonable ability to prevent consequential damages by covering, coupled with Lewis’s testimony as to the scarcity of similar opportunities, raises a genuine issue of material fact.
Finally, the majority asserts that “Lewis is further barred from recovering consequential damages under § 30-2-715, MCA, because he failed to raise a question of material fact concerning any general or specific requirements he had for the Nine Mile timber.” A review of the agreement between the parties demonstrates that Lewis’s requirements for the timber were anticipated by the parties during negotiations and are implicit in the language of the final agreement which provides:
As payment to the landowners of the logging agreement, A.C. Lewis shall pay to the landowners a stumpage rate of $70/MBF for all merchantable timber to be removed from said mining claim. All such payment to the landowners shall be paid directly by the saw mills purchasing said timber produced from the Nine Mile claim.
(Emphasis added.) The record supports a conclusion that, as to the issues of requirements and consequential damages, there exist genuine issues of material fact.
I would reverse the District Court’s granting of Nine Mile’s motion for summary judgment.
JUSTICE TRIEWEILER joins in the foregoing dissent.